Mr. Justice James
delivered the opinion of the
Court:
On the —■ day of-, Ann Jones departed this life, leaving her last will in the following words: “I am of sound mind; I will to Anne B. Atkinson my clothes and what furniture I may leave; to Miss Maggie Mitchell, of Georgetown, my books, pictures and little fancy articles; my watch to Bolling Thornton; silver napkin ring and fork to little Mamie Cobb, daughter of Norvell Cobb. What money may be in Johnson’s Bank to be equally divided between Jennie B. Atkinson, Paul Jones, P. R. W. Thorntoti and the children of my late niece, Ella M. Turley; G. R. Atkinson to hold Paul *543 Jones’ in trust for him, paying him a certain sum per month; what he thinks will do for his support. Ann Jonbs.
“I wish my large shawl and white spread given to Mrs. Mary H. Brown, of Georgetown, D. C. A. J ones .
“If my birds are living to be given to Miss Isa Mitchell.
“My father’s picture to Jennie B. Atkinson.”
The complainants, two of whom are infants, suing by their next friend, are the children of Ella M. Turley referred to in the will, and grandnieces of the testatrix. They claim that the testatrix intended that each of them should share equally with the defendants Atkinson, Jones and Thornton in the money left in the bank; in other words, that each of them should have one-eighth thereof.
The answer shows that the defendant Atkinson and the wife of defendant Thornton are nieces, and that the defendant Paul Jones is a nephew of the testatrix; and claims that it was the intent of her last will that each of them should have one-fourth of the money in question, and that the children of her other niece should stand in the place of their deceased mother, and should together take one fourth.
The question to be determined is whether, ,in the mind of this testatrix-, the children of her niece Ella were a group, succeeding to her place, or were thought of by her as individuals, in j ust the same way that she thought of her niece Atkinson and nephew Jones. And it seems that, before we decide this question, we have to consider a preliminary question, namely, whether we are bound by the authority of any judicial rule by which the intention of a testator in such provisions is to be determined.
Ever since the statute of wills was enacted the courts have said that the intention of the testator was the one subject of inquiry, and was to control, provided his intent was lawful; and then they proceeded to gather from interpretations and constructions already made in what seemed to them to be analogous cases, positive rules by which the intention of each later testator must be determined. The effect of this has been that each testator was obliged to mean what other *544 testators had meant in what was adjudged to be a like case. To a certain extent this method was inevitable. For example, the courts must presume that a testator uses, in the sense established by common usage, the words of the language in which he expresses his intention. On the same ground it must be presumed that he uses in their technical sense phrases which have an established technical meaning. The presumption in both cases is that everybody uses language in its common sense; and it is reasonable that a rule to that effect should be stated as a judicial rule of interpretation.
But in England, and in some of the States in this country, the courts have gone quite beyond this necessary process. When they found that the testator had been held in previous cases to have intended a certain distribution of his property by a certain provision, they held that it was a rule that all testators had that intention when they employed similar language. It might be that the circumstances would suggest that the same expressions had in view a different result in a particular case, and that the courts had a shrewd perception of a different intention in a particular case, and would have been guided by that perception if there had been no rule for ascertaining the intention; but the effect has been that the testator’s intention has been determined for him according to the general rule.
We can readily understand that a judicial discussion of one will should throw light upon the construction of another, and suggest methods of inquiry and of reasoning which would be applicable in a new case; but we do not perceive that earlier interpretations can have an authority which forces upon a later testator an intention which he may not have had. Other courts have felt that the formulation of rules for ascertaining particular intentions has been carried too far, and have sought to free themselves from an obligation to follow them in disregard of what they believed to be the personal intent of a particular testator. This indisposition to measure intention by an alleged rule has been shown in reference to the very questions now before us. In Raymond vs. Hillhouse, 45 Conn., 474, the court said: “The English rule, *545 that referring to children is the same as if they were individually named in the will, in view of the exceptions which so easily set it aside, is of little practical importance, and it does not seem to have been recognized in this State, although cases have been discussed and decided where its application would have been controlling.” In Ferrer vs. Payn, 81 N. Y., 284, the court said: “The rule referred to has, in modern times, been applied with reluctance by some courts, because it had become a rule of property, and by others out of deference to its supposed author^; but in many, if not in all cases, with open protest, while by others it has been wholly rejected.” Mintern’s Appeal, 40 Pa. St., 111, 114, was one of the cases in which the rule was wholly rejected, or rather was simply ignored without being discussed. The bequest was 1 ‘share and share alike among the children of my brother Adam and the children of my brother Martin and to my sister Barbara.” The court said: “If he meant that his nephews should each be equal to his sister’s, the word each would have made his meaning clear,.”
If the question whether the old rule is of binding authority were to be decided by weight of authority, we should not feel bound to conform to it; but apart from the weight of authority, we conceive that the intent of such a provision as this is not the proper subject of a rule of interpretation. We feel at liberty, therefore, to consider the circumstances of this bequest, as well as its language. It is manifest that family affection was the controlling impulse of this bequest, and this element is to be considered in determining what the testatrix intended to do in accordance with that motive. It is, on the one hand, consistent with that motive that the children of a niece whom the testatrix remembered with affection should be placed in their mother’s stead, and on the other, improbable that the shares of the beneficiaries should increase as their consanguinity became more remote. At the same time equal division wasqust as applicable to the objects of her care, if we suppose three of those objects to have been individuals and the fourth a group, as it would be if we suppose all the parties to have been intended individually. It may be said *546 further that, while it is not probable that the testatrix would enlarge her gift as the kinship of the recipients receded, it is not natural, and therefore not probable, that those who remained nearest should suffer diminution of her regard by the appearance of more remote kindred. In the absence of distinct expressions to the contrary, we think that these considerations are a safer guide in determining what the testatrix meant by an equal division between her nearest kindred and the children of one who had stood in the same degree, than the English rule would be. We are of opinion that'the kindly aunt actually did mean what was most natural that she should mean, if her words are fairly consistent with such an intention. Inasmuch as it was natural that her near kindred should retain their places in her regard after their sister Ella had departed, and the language of her will is not inconsistent with an intention that they should do so, we think it was her intention that equality of division 'was attained by giving them undiminished the shares of nieces and nephew, and by giving to the children of the departed niece their mother’s share. The decree will be that the complainants are entitled to receive together one-fourth part of the money in bank, and that the defendants are entitled to receive three-fourths thereof.

The decree is reversed.